**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| CHARLES DOMINICK LOMBINO,<br><br>    Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., et al,<br><br>    Defendants.<br>_____<br><br>and related Counterclaims. | 2:09-cv-0036-LDG-RJJ<br><br>**ORDER** |

     Plaintiff Charles D. Lombino brought this action against Defendants Bank of America, N.A. ("BOA") and Shawn Aberman, a BOA Branch Manager, for damages resulting from Aberman's alleged assurances that a check deposited by Plaintiff had cleared and that such funds were legitimately available for Plaintiff's use. Plaintiff claims that he, allegedly relying on Alberman's inaccurate representations, unwittingly transferred $185,000 of the $197,500 total check proceeds to an overseas bank account held by an unidentified scam artist posing as Plaintiff's client. Two days after the international funds transfer, BOA informed Plaintiff that the check was a forgery and charged Plaintiff's account for the resulting overdraft. Defendants, however, deny that Aberman made any such representations, maintain that Plaintiff bears the risk of any overdraft resulting from the deposit of a forged check, and contend that each of Plaintiff's claims are meritless. Defendants have accordingly filed a motion for summary judgment (#39,

opposition #46, reply #48).  Defendants have also filed a motion to strike Plaintiff's jury demand (#54, opposition #56, reply #57).

A grant of summary judgment is appropriate only where the moving party has demonstrated through "the pleadings, the discovery and disclosure materials on file, and any affidavits" that there is "no genuine issue of material fact" and that "the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (a), (c); *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  All justifiable inferences must be viewed in the light most favorable to the non-moving party.  *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).  The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 531 (9th Cir. 2000).  A fact is material if it "might affect the outcome of the suit under the governing law . . . ."  *Anderson*, 477 U.S. at 248.  A material fact "is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 500 (9th Cir. 1992) (quoting *Anderson*, 477 U.S. at 247-48 (1986)).  The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial.  *Id.*  The party opposing summary judgment "must cite to the record in support of the allegations made in the pleadings to demonstrate that a genuine controversy requiring adjudication by a trier of fact exists."  *Taybron v. City & County of San Francisco,* 341 F.3d 957, 960 (9th Cir. 2003).  If the non-moving party meets its burden, summary judgment must be denied. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

The parties dispute the substance and import of Aberman's communications with Plaintiff. According to Plaintiff, Aberman told him that "in no event would the hold [on Plaintiff's deposited check] be lifted before the check 'cleared'" and "it was [BOA's] policy on checks of the magnitude of the [subject check] that no access to the funds would be granted until Defendant [BOA] was certain that there were good funds to support it."  Pl.'s Opp'n to Mot. for Summ. J. 5-

6, ECF. No. 46.  Plaintiff also alleges that Aberman agreed to "call CitiBank directly to verify the [check] before the hold was released" and that Aberman later informed Plaintiff that "the funds were released and that it was safe for Plaintiff to access the funds." *Id.* at 6.  Plaintiff further alleges that after Defendants "told him that the hold was released, the check had cleared, and the funds were good," Plaintiff transferred the check proceeds. *Id.*  After BOA discovered that the check was a forgery, Plaintiff claims that Aberman told Plaintiff "that Aberman's representations didn't mean anything" and that "he had never made any attempt to [contact] Defendant Citi about the [check]." *Id.* at 7.  Defendants deny that Aberman made any such representations.  Defendants also maintain, however, that summary judgment is appropriate even if Aberman made such representations. *See, e.g.*, Defs.' Reply in Support of Its Mot. for Summ. J. 2, ECF No. 48 ("Nonetheless, even assuming that such a statement was made . . . summary judgment is warranted.").  Thus, while issues of fact exist as to the substance of Aberman's communications with Plaintiff, Defendants suggest that such issues do not constitute genuine issues of material fact.

Defendants maintain that summary judgment is appropriate notwithstanding Aberman's alleged representations because the parties' contract governs this matter and because Plaintiff's tort claims must fail.  The Depositor Agreement between the parties clearly and repeatedly states that BOA may overdraw a depositor's account if the depositor has insufficient funds to pay a returned item and that a depositor agrees to repay any unpaid amounts. *See id.*; Defs.' Mot. for Summ. J. 5, ECF. No. 39.  Based on these provisions, Defendants argue that Plaintiff's claims must fail and that Defendants must prevail on their counterclaim for yet uncollected amounts.  These provisions, however, do not sufficiently support Defendants' arguments.  Defendant BOA's right to overdraw Plaintiff's account does not neutralize Plaintiff's ability to seek compensation based on Defendants' alleged representations or defeat the colorability of Plaintiff's equitable defenses to Defendants' counterclaims. *See Holcomb v. Wells Fargo Bank, N.A.*, 66 Cal. Rptr. 3d 142, 148 (Cal. Ct. App. 2007) ("Holcomb's negligent misrepresentation claim, however, does not

take issue with Wells Fargo's right to charge back, but with statements made by Wells Fargo's branch manager, Viles, which induced Holcomb to write checks against his $10,000 deposit."); *First Nat'l Bank of Denver v. Ulibarri*, 557 P.2d 1221,1223 (Colo. App. 1976) (holding that a bank employee's inaccurate representations that the plaintiff's recently deposited check was "finally settled" precluded bank's recovery of consequent overdraft under doctrine of equitable estoppel); *First Ga. Bank v. Webster*, 308 S.E.2d 579, 583 (Ga.Ct. App. 1983) ("Since there was evidence from which the trier of fact could conclude that the appellee reasonable relied, to his detriment, on the bank's representation that his deposited check was 'good,' the elements of estoppel were present and prevented the bank from obtaining a refund of the amount credited to appellee's account."); *Valley Bank of Ronan v. Hughes*, 147 P.3d 185, 192-93 (Mont. 2006) ("Therefore, while Hughes bore the obligation to satisfy the bank's right to charge-back . . . it nevertheless is possible for Hughes to obtain a judgment to compensate him for the charge-back debt. . . .); *Burke v. First Peoples Bank of N.J.*, 412 A.2d 1089, 1093 (N.J. Dist. Ct. 1980) (holding that disputed communications regarding the validity of a deposited check constituted genuine issues of material fact regarding the plaintiff's equitable defense claims); *cf. Golden Gulf, Inc. v. Amsouth Bank, N.A.*, 565 So. 2d 114. 116-18 (Ala. 1990) (affirming summary judgment in favor of bank where bank employees told depositor that check funds were "available" but not "collected"); *Allen v. Carver Fed. Savings and Loan Ass'n*, 477 N.Y.S.2d 537, 538 (NY 1984) (expressing doubt that "the mere statement that an unidentified teller told her (mistakenly) that the check had 'cleared', when in fact it had not, constitutes that quantum of proof of negligence which will enable a costumer to prevail . . . ."). Furthermore, Defendants have not yet fully convinced the court that Plaintiff's claims must fail as a matter of law. Therefore, viewing the evidence in the light most favorable to Plaintiff, this court cannot agree with Defendants' assertion that Aberman's contested communications fail to constitute genuine issues of material fact.

Defendants have also moved to strike Plaintiff's demand for jury trial based on provisions within the Deposit Agreement.  The right to a jury trial in federal court is governed by federal law.  *Phx. Leasing Inc. v. Sure Broad., Inc.*, 843 F.Supp. 1379, 1384 (D. Nev. 1994) (citing *Simler v. Conner,* 372 U.S. 221, 221-22 (1963)).  "Although the right to jury trial in civil cases tried before federal courts is a constitutionally protected right, it may be waived by a contract knowingly and voluntarily executed."  *Id.*  The Deposit Agreement states:

> If you or we request, any controversy or claim ("controversy") concerning your deposit account relationship with us, including any claim based on or arising from an alleged tort, will be determined by arbitration, reference, or trial by a judge as provided below. *A controversy that involves an amount in dispute of less than $1 Million will be determined by arbitration as described below. Any other controversy will be determined by judicial reference of the controversy to a referee appointed by the court or, if the court where the controversy is venued lacks the power to appoint a referee, by trial by a judge without a jury, as described below.* The arbitration, judicial reference or trial by a judge will take place on an individual basis without resort to any form of class action.
>
> WHETHER THE CONTROVERSY IS DECIDED BY ARBITRATION, BY JUDICIAL REFERENCE, OR BY TRIAL BY A JUDGE, YOU AGREE AND UNDERSTAND: (I) THAT YOU AND WE ARE GIVING UP THE RIGHT TO TRIAL BY JURY, AND THERE WILL BE NO JURY AND (II) THAT THIS SECTION PRECLUDES YOU AND US FROM HAVING THE RIGHT TO PARTICIPATE OR BE REPRESENTED IN ANY FORM OF CLASS ACTION OR ANY OTHER LITIGATION FILED IN COURT BY OTHERS.

Deposit Agreement and Disclosures, at 72 (emphasis added).  Defendants argue that these provisions clearly constitute a contractual waiver of Plaintiff's right to jury trial.  The court disagrees.  Upon request of either party, claims relative to the deposit account relationship will be determined either by arbitration, reference, or by bench trial as further provided in the agreement.  The Agreement then specifically states that "[a] controversy that involves an amount in dispute of less than $1 Million will be determined by arbitration as described below." *Id.*  A subsequent subsection entitled "Arbitration" describes the intended arbitration process for such controversies.  Neither party has either indicated or implied that this controversy exceeds one million dollars.  Thus, assuming that this controversy concerns Plaintiff's "deposit account relationship" with Defendant BOA, either party may request arbitration according to the arbitration procedure

5

described in subsequent provisions. *Id.* This alone, however, does not constitute a waiver of Plaintiff's right to jury trial outside of arbitration.

      Defendants' claim that Plaintiff waived his right to jury trial is based on an unreasonable interpretation of the phrase "[a]ny other controversy." *Id.* After indicating that "[a] controversy that involves an amount in dispute of less than $1 Million will be determined by arbitration," the agreement then specifies that "[a]ny other controversy will be determined by judicial reference of the controversy to a referee appointed by the court or, if the court where the controversy is venued lacks the power to appoint a referee, by trial by a judge without a jury, as described below." *Id.* Defendants assume that "[a]ny other controversy" refers to any controversy not determined by arbitration, irrespective of the amount of such controversy. *Id.* Such an interpretation is at odds with the specific and mandatory language of the preceding sentence and is unreasonable when viewed in context of the whole provision. Furthermore, even assuming Defendants' interpretation, Defendants have made no showing that this court "lacks the power to appoint a referee." *Id.* Therefore, even assuming that this provision was "knowing and voluntarily executed," Defendants have failed to show that Plaintiff waived his right to jury trial. *Phx. Leasing*, 843 F.Supp. at 1383. Accordingly,

      THE COURT HEREBY ORDERS that Defendants' Motion for Summary Judgment (#39) is DENIED.

      THE COURT FURTHER ORDERS that Defendants' Motion to Strike Plaintiff's Demand for Jury (#54) is DENIED.

      DATED this \_\_8\_\_ day of November, 2010.

_____
Lloyd D. George
United States District Judge

6