UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CHARLES DOMINICK LOMBINO,<br><br>    Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., et al,<br><br>    Defendants.<br><br>and related Counterclaim. | 2:09-cv-0036-LDG-RJJ<br><br>**ORDER** |

      Plaintiff Charles D. Lombino brought this action against Defendants Bank of America, N.A. ("BofA") and Shawn Aberman, a BofA Branch Manager, for damages resulting from Aberman's alleged assurances that a check deposited by Lombino had cleared and that such funds were legitimately and permanently available for Lombino's use. Lombino claimed that he, relying on Alberman's inaccurate representations, unwittingly transferred $185,000 of the $197,500 total check proceeds to an overseas bank account held by an unidentified scam artist posing as his client. Two days after the international wire transfer, BofA informed Lombino that the check was a forgery and setoff Lombino's accounts for a portion of the resulting overdraft.

      At trial, Lombino sought $139,473.15 in damages, representing $128,473.15 setoff from his BofA accounts and $11,000 in damage to his business, based on the following theories of recovery: fraud, negligent misrepresentation, negligence, and conversion. Defendants

counterclaimed for $55,766.85, representing the yet uncollected overdraft amount. After a three-day trial on the parties' claims, the jury returned a verdict for Lombino on his negligence and negligent misrepresentation claims and awarded $128,473.15. Defendants have now filed a motion for new trial on those claims (#97, opp'n #100, reply #105).

A court may grant a new jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Although "Rule 59 does not specify the grounds on which a motion for a new trial may be granted," the court is "bound by those grounds that have been historically recognized." *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003). "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (citing *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940)). The Ninth Circuit has held that "[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Id.* (citing *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000)).

Defendants argue that a new trial is appropriate under Rule 59 because "the jury's verdict is not supported by the evidence." Defs.' Mot. for New Trial 2, ECF No. 97. When considering a motion for new trial based on the alleged insufficiency of evidence supporting a jury verdict, "[a] trial court may grant a new trial only if the jury's verdict was against the clear weight of the evidence." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir. 2009). "[T]he district court has the duty . . . to weigh the evidence as [the court] saw it, and to set aside the verdict of the jury, even though supported by substantial evidence, where, in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the evidence." *Molski*, 481 F.3d at 729. Determining whether a jury verdict is against "the clear weight of the evidence" is a

case-specific endeavor for which there is no easily articulated formula. *Id.* "A trial court may grant a new trial only if the verdict is against the clear weight of the evidence, and may not grant it simply because the court would have arrived at a different verdict." *Martin v. Cal. Dep't of Veterans Affairs*, 560 F.3d 1042, 1046 (9th Cir. 2009) (citing *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)). Probably the best that can be said is that the Court should grant the motion "[i]f, having given full respect to the jury's findings, the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Landes Constr., Co., Inc. v. Royal Bank of Can.*, 833 F.2d 1365, 1371-72 (9th Cir. 1987) (quoting 11 Wright & Miller, Fed. Prac. & Proc. § 2806, at 48-49).

Defendants argue that the evidence cannot support the jury verdict because the "[Electronic Funds Availability Act ("EFAA")] provides an absolute defense to Lombino's claims" and because "Plaintiff's claims are preempted by the [National Banking Act ("NBA")]." Defs.' Reply in Supp. of Mot. for New Trial 9, ECF No. 105; Defs.' Mot. for New Trial 10, ECF No. 97. Defendants' post-trial legal arguments are not properly before the court on a motion for new trial. *See Tortu*, 556 F.3d at 1085 ("This legal matter cannot be appropriately considered on a motion for a new trial, where the issue is whether the jury's verdict is against the clear weight of the evidence."); *see also Parton v. White*, 203 F.3d 552, 556 (8th Cir. 2000) ("Rule 59 motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments that could have been offered or raised prior to entry of judgment."). Even if Defendants had presented these arguments to the court on a renewed motion for judgment as a matter of law, "[a] party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion." *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003); *see also E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009) ("Because it is a renewed motion, a proper post-verdict Rule 50(b) motion is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion."). Defendants' pre-verdict Rule 50(a)

3

motion did not present any argument why they were entitled to judgment as a matter of law on Lombino's negligent misrepresentation claim, Trial R. 156:14-15, ECF No. 95, and Defendants simply argued they were entitled to judgment on Lombino's negligence claim because "there is no evidence of duty," *Id.* at 156:16-17. Furthermore, Defendants stipulated to the jury instructions and verdict forms and thus cannot now complain about the submission of Lombino's claims to the jury. *See Voohries-Larson v. Cessna Aircraft Co.*, 241 F.3d 707, 713-14 (9th Cir. 2001); *see also Beech Aircraft Corp. v. U.S.*, 51 F.3d 834, 840-41 (9th Cir. 1995) (declining to entertain the plaintiffs' argument that the district court placed the burden of proof on the wrong party where the plaintiffs first raised the argument in a post-trial motion). *Herrington v. Sonoma Cnty.*, 834 F.2d 1488, 1499 (9th Cir. 1987) ("It agreed without reservation to the submission of the issues to the jury on the instructions given, and thus cannot complain of the instructions on appeal."). Finally, even if Defendants had properly presented and preserved these arguments, the court is not persuaded that either statute preempted Lombino's claims. Lombino's claims involved elements that are beyond the narrow scope of EFAA preemption, *see Beffa v. Bank of W.*, 152 F.3d 1174, 1177-78 (9th Cir. 1998), and Lombino's tort claims no more than "incidentally affect the exercise of [BofA's] deposit-taking powers" under the NBA, *see* 12 C.F.R. § 7.4007(c)(2); *Bank of Am. v. City of S.F.*, 309 F.3d 551, 559 (9th Cir. 2002) ("State regulation of banking is permissible when it does not prevent or significantly interfere with the national bank's exercise of its powers. Thus, states retain some power to regulate national banks in areas such as contracts, debt collection, acquisition and transfer of property, and taxation, zoning, criminal, and tort law."); *see also In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1313-14 (S.D. Fla. 2010).

Defendants similarly argue that the negligent misrepresentation claim was not supported by the evidence because that claim involved a promise to perform a future act. As stated above, Defendants' new legal arguments are not properly before this court. However, even assuming that the Nevada Supreme Court would hold that a misrepresentation as to future performance cannot

4

be negligent, *see Cundiff v. Dollar Loan Ctr. LLC*, 726 F. Supp. 2d 1232, 1238 (D. Nev. 2010), Lombino's negligent misrepresentation claim was not based solely on an allegedly negligent promise of future performance, *see* Trial R. 38:9-25, ECF No. 95.  Lombino introduced evidence that he authorized the wire transfer after Aberman misrepresented that the check had cleared.  *See id.*  As Defendants apparently concede, such testimony is sufficient to establish a "prima facie case" of negligent misrepresentation.  *See id.* at 156:14-15 ("Actually, there's probably a prima facie case there, so that's probably the claim that we think should go to a jury.").  Furthermore, evidence of Aberman's earlier "promise" provides context for his later alleged misrepresentation.  *See, e.g., id.* at 38:16-19 ("But he did call me back, I'm sure about that part, and he said, you know, that the funds had cleared, everything is okay. And I said, you mean in light with what we were talking about. Yeah, everything's okay.").  "[W]eigh[ing] the evidence as [the court] saw it," the court cannot conclude that "the verdict is against the clear weight of the evidence," *Molski*, 481 F.3d at 729, nor is the court left with a "definite and firm conviction that a mistake has been committed," *Landes Constr., Co., Inc.*, 833 F.2d at 1371-72 (quoting 11 Wright & Miller, Fed. Prac. & Proc. § 2806, at 48-49).

        Defendants argue that the negligence claim was not supported by the evidence because that claim is barred by the economic loss doctrine.  The economic loss doctrine generally "bars unintentional tort actions when the plaintiff seeks to recover 'purely economic losses.'"  *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 86 (Nev. 2009); *id.* at 87 ("[U]nless there is personal injury or property damage, a plaintiff may not recover in negligence for economic losses.").  "Purely economic loss is generally defined as the loss of the benefit of the user's bargain . . . including . . . pecuniary damage for inadequate value, the cost of repair and replacement of the defective product, or consequent loss of profits, without any claim of personal injury or damage to other property."  *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000) (citation and internal quotation marks omitted), *overruled on other grounds by Olson v. Richard*,

89 P.3d 31 (Nev. 2004) (en banc). Here, however, in addition to the amount setoff from his BofA accounts, Lombino sought to recover damage to his reputation and business.[1] *See* Compl. ¶¶ 39-41, 51-53; Trial R. 53:21-54:20, ECF No. 95; Trial R. 63:20-64:11, ECF No. 96; *see also Lopez v. Janier Corral, D.C.*, Nos. 51541, 51972, 2010 WL 5541115, at *4 (Nev. Dec. 20, 2010) ("[T]he damages here were not solely for economic loss, as they include damages to Corral's reputation and business-his intangible property . . . ."). Additionally, because Lombino does not have any apparent contract-law remedy for the type of harm alleged, the policy considerations behind the economic loss doctrine are also inapplicable. *See Lopez*, 2010 WL 5541115, at *4.

Defendants further argue that the negligence claim was not supported by the evidence because that claim is preempted by the Uniform Commercial Code as adopted by Nevada ("UCC"). As stated above, Defendants' new legal arguments are not properly before this court. *See, e.g.*, Defs.' Reply in Supp. of Mot. for Summ. J. 7, ECF No. 39 ("Again, the issue of preemption is not currently before this Court."). In any event, however, relying on *Chino Commercial Bank, N.A, v. Peters*, 118 Cal. Rptr. 3d 866 (Cal. Ct. App. 2010), Defendants argue that Nevada Revised Statutes § 104.4401(1) displaces Lombino's negligence claim based on BofA's actions in conducting the wire transfer. *See* Defs.' Mot. for New Trial 5-7 ("NRS § 104.4401 displaces all common law theories of recovery based on the same conduct. Thus, this provision displaces Plaintiff's common law claim for negligence for payment from a customer's account, such as the wire transfer."). Section 104.4401(1) states:

> A bank may charge against the account of a customer any item that is properly payable from that account even though the charge creates an overdraft. An item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank.

Defendants' argument that § 104.4401(1) displaces Lombino's negligence claim fails, however, because a wire transfer is not an "item." *See* Nev. Rev. Stat. § 104.4104; Nev. Rev. Stat. §

---

[1] Lombino also sought to introduce evidence of emotional damages at trial, but the court excluded such evidence based on insufficient pretrial disclosure. Trial R. 127:7-128:15, ECF No. 94.

6

104A.4102; *see also Chino Commercial Bank, N.A.*, 118 Cal. Rptr. 3d at 873 ("A wire transfer, however, is not an 'item.'"). Furthermore, even if this court were to adopt the reasoning of *Chino Commercial Bank* and conclude that "[u]nder UCC section 4A-212 [Nev. Rev. Stat. § 104A.4212] . . . a receiving bank cannot be held liable under common law theories for merely accepting a wire transfer," *Chino Commercial Bank, N.A.*, 118 Cal. Rptr. 3d at 875, Lombino did not predicate his negligence claim on BofA's acceptance of the wire transfer request, *see* Trial R. 62:15-63:13, ECF No. 96 (arguing that the jury should find for Lombino on his negligence claim because of Defendants' misrepresentation that the check had cleared and failure to inform Lombino of the check's fraudulent status in sufficient time to stop the wire transfer despite having such knowledge for approximately two days). Defendants have not directed the court to any other provision of Nevada law except § 104.1103, and that section indicates that "the principles of law and equity" supplement the UCC "[u]nless displaced by the particular provisions." Nev. Rev. Stat. § 104.1103(2). Inasmuch as Defendants argue that Lombino's negligence claim is preempted by a particular UCC provision, Defendants have failed to direct the court to any such provision. Insofar as Defendants argue that Lombino's negligence claim is preempted by the UCC generally, this argument duplicates Defendants' argument that Lombino failed to present any evidence of a duty or breach

Defendants argue that the negligence claim was not supported by the evidence because Lombino failed to present any evidence of a duty or breach. Defendants argue that "Lombino failed to present any evidence as to the standard of care for the banking industry" and, consequently, "there was no evidence that [Defendants] fell below the relevant standard of care for the banking industry." Defs.' Reply in Supp. of Mot. for New Trial 12. Defendants further argue that "it was quite literally impossible for Lombino to meet his burden of proof without expert testimony" because "the standard of care under the UCC differs from the standard for common law negligence" and because his claim involved internal banking procedures unfamiliar to most

jurors. *Id* at 13-14. Lombino conversely argues that he "[d]oes [n]ot [n]eed [e]xpert [t]estimony to [e]stablish Defendants' [d]uty to [t]ell [him] the [t]ruth." Pl.'s Opp'n to Mot. for New Trial 15. The court agrees. Lombino based his negligence claim on the same negligent behavior supporting his negligent misrepresentation claim, and the court cannot conclude that the negligence claim was either improperly presented or inadequately supported. *See Hazelwood v. Harrah's*, 862 P.2d 1189, 1193 (Nev. 1993) ("As to negligence and negligent misrepresentation, we agree with the district court that the statements made by Eto created a false impression in the mind of Hazelwood; that is, that there was nothing improper about looking for the discarded ticket and that if he found it, he would be paid. Clearly, the jury could reasonably have believed that the misrepresentation proximately caused Hazelwood's pecuniary losses."), *overruled in part on other grounds by Vinci v. Las Vegas Sands*, 984 P.2d 750 (Nev. 1999). To the extent that Lombino also based his negligence claim on Defendants' delay in informing him that the check was a forgery, Aberman testified to the jury about BofA's applicable procedures, and, as noted above, Defendants have not cited the court to any particular UCC provision applicable to the theories underlying Lombino's negligence claim. Even if Lombino had failed to properly support this alternative factual basis for liability by appropriate expert testimony or as required under the UCC, the court still cannot conclude that the negligence verdict is against the clear weight of the evidence. *See McCord v. Maguire*, 873 F.2d 1271, 1273-74 (9th Cir. 1989) ("When a general verdict may have rested on factual allegations unsupported by substantial evidence, we will uphold the verdict if the evidence is sufficient with respect to any of the allegations."). Furthermore, even assuming that Lombino's negligence claim was either legally improper or insufficiently supported, the jury's damage verdict is properly supported by the evidence. "As a rule, a general jury verdict will be upheld only if there is substantial evidence to support each and every theory of liability submitted to the jury." *Syufy Enters v. Am. Multicinema, Inc.*, 793 F.2d 990, 1001 (9th Cir. 1986). "An exception to this rule exists, however, when we are able to

construe a general verdict as attributable to a theory submitted to the jury that was viable . . . ." *Webb v. Sloan*, 330 F.3d 1158, 1166-67 (9th Cir. 2003) (citing *Portland Feminist Women's Health Ctr v. Advocates for Life, Inc.*, 62 F.3d 280, 285-86 (9th Cir.1995)). In deciding whether to exercise discretion and apply this exception, courts consider: "(1) the potential for confusion of the jury; (2) whether the losing party's defenses apply to the count upon which the verdict is being sustained; (3) the strength of the evidence supporting the count relied upon to sustain the verdict; and (4) the extent to which the same disputed issues of fact apply to the various legal theories." *Id.* (citing *Traver v. Meshriy*, 627 F.2d 934, 938-39 (9th Cir. 1980)). Here, in contrast to the prototypical general verdict form, the jury both specified the theories upon which it found for Lombino and allocated the parties' respective fault on each of those theories. The jury found Defendants fully liable on the negligence and negligent misrepresentation claims. Accordingly, the rationale for the general rule does not apply because there is no danger that the jury found liability based only on the negligence claim, *see Webb*, 330 F.3d at 1167 ("Because of the special interrogatories, there is no danger that the jury found liability only on a legally defective theory. The only aspect of the verdict that is 'general' is the damages award, which was not apportioned among the claims."), and Defendants have waived any argument challenging the verdict form, *see Pau v. Yosemite Park and Curry Co.*, 928 F.2d 880, 891 (9th Cir. 1991), jury instructions, *see Grosvenor Props. Ltd. v. Southmark Corp.*, 896 F.2d 1149, 1152-53 (9th Cir. 1990), or factual sufficiency of Lombino's alternative theories of negligence, *see McCord*, 873 F.2d at 1274. This case also fits within the *Traver* exception to the general rule. *See Traver*, 627 F.2d at 938-39. The specific verdict form eliminates concerns of jury confusion, the negligent misrepresentation claim is supported by clear testimonial evidence, and both claims orbit the same nucleus of operative facts and defenses. Therefore, even assuming that Lombino's negligence claim was either legally improper or insufficiently supported, the jury's verdict is properly supported by the evidence. As stated above, however, "weigh[ing] the evidence as [the court] saw it," the court

9

cannot conclude that "the verdict is against the clear weight of the evidence," *Molski*, 481 F.3d at 729, nor is the court left with a "definite and firm conviction that a mistake has been committed," *Landes Constr., Co., Inc.*, 833 F.2d at 1371-72 (quoting 11 Wright & Miller, Fed. Prac. & Proc. § 2806, at 48-49).  Accordingly,

THE COURT HEREBY ORDERS that Defendants' motion for new trial (#97) is DENIED.

DATED this 21 day of June, 2011.

_____
Lloyd D. George
United States District Judge